```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
                                :    11 Misc. 0379 (WHP)
IRVING H. PICARD, trustee for the :
Liquidation of Bernard L. Madoff  :  MEMORANDUM & ORDER
Investment Securities, LLC        :
                                :
       Plaintiff,               :
                                :
       -against-                :
                                :
ESTATE OF MARK D. MADOFF and    :
ANDREW H. MADOFF,               :
                                :
       Defendants.              :
                                :
-------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/22/11

WILLIAM H. PAULEY III, District Judge:

        Defendants the Estate of Mark D. Madoff ("Mark") and Andrew H. Madoff ("Andrew") move pursuant to 28 U.S.C. §158(a)(3) for leave to appeal the Bankruptcy Court's Memorandum Decision & Order ("Decision & Order") denying in part Defendants' motion to dismiss the Trustee's complaint. For the following reasons, Mark and Andrew's motion for leave to appeal the Bankruptcy Court's Decision & Order is denied.

## BACKGROUND

        Bernard L. Madoff ("Madoff") owned Bernard L. Madoff Investment Securities LLC ("BLMIS") and perpetrated the largest Ponzi scheme of all time.[1] In December 2008, the scheme unraveled, federal agents arrested Madoff, and the world learned that he and BLMIS had

defrauded thousands of investors out of billions of dollars. (BLMIS I, 424 B.R. at 126-26.) Instead of investing his client's funds, Madoff simply deposited the money into a bank account at JP Morgan Chase and used it freely to support his life style, prop up BLMIS, and pay client redemptions. (BLMIS I, 424 B.R. at 129.)

BLMIS had three business units: (1) market making, (2) proprietary trading, and (3) investment advisory services. (BLMIS I, 424 B.R. at 127.) Madoff's sons Mark and Andrew ran the market making and proprietary trading businesses, which appear to have been legitimate, albeit unprofitable, enterprises. (BLMIS I, 424 B.R. at 127.) Madoff and a few select insiders perpetrated the Ponzi scheme through the investment advisory services unit. (BLMIS I, 424 B.R. at 127.) As principals and insiders of BLMIS, Mark and Andrew owed fiduciary duties to conduct compliance and implement risk monitoring programs. (Decision & Order at 6-7.) The parties dispute whether those duties covered all BLMIS operations or just the business units that Mark and Andrew supervised.

I.  Procedural History

On December 11, 2008, the Securities Exchange Commission ("SEC") filed a civil action against Madoff and BLMIS. (BLMIS I, 424 B.R. at 126-26.) On December 15, 2008, the Securities Investor Protection Corporation ("SIPC") filed an application in the SEC's civil action seeking a decree that the Securities Investors Protection Act ("SIPA") covered BLMIS clients. (BLMIS I, 424 B.R. at 126.) The district court (Stanton, J.) granted SIPC's application and ordered that BLMIS's clients be placed under the protections of SIPA, appointed

---

[1] For a comprehensive review of the facts underlying Madoff's Ponzi scheme and the SIPA Liquidation see In re Madoff Inv. Sec. LLC, 424 B.R. 122, 125-132 (Bankr. S.D.N.Y. 2010) ("BLMIS I").

Irving Picard as trustee ("Trustee") for the liquidation of BLMIS, and transferred the liquidation proceeding to the Bankruptcy Court. (BLMIS I, 424 B.R. at 126.)

Mark filed claims against the BLMIS estate for (1) $44,815,520 in deferred compensation, (2) $33,201 in unpaid salary, (3) $4,000,000 in unpaid bonuses, and (4) $5,000,000 for his investment in Madoff Securities International Limited ("MSIL"). Andrew filed claims against the BLMIS estate for (1) $ 40,624,525 in deferred compensation, (2) $66,251 in unpaid salary, and (3) $5,000,000 for his investment in MSIL. (See Trustee's Memorandum of Law dated Oct. 20, 2012 at 23.)

In October 2009, the Trustee sued Mark, Andrew, and other family members, alleging they had "front row seats" to the biggest financial fraud of all time, ignored red flags, and failed to exercise their corporate fiduciary duties. (Decision & Order at 3.) The Trustee sought to avoid and recover fraudulent transfers made from BLMIS to Madoff family members and to disallow and subordinate Mark's and Andrew's claims against the BLMIS estate. (Decision & Order at 4.) The Trustee brought the action under the Bankruptcy Code and the New York Debtor and Creditor Law and also asserted common law claims against Mark and Andrew for breach of fiduciary duty, negligence, conversion, unjust enrichment, constructive trust and accounting (the "common law claims"). (Decsion & Order at 4.) Mark and Andrew's motion for leave to appeal concerns only the common law claims.

In March 2010, Mark and Andrew moved to dismiss the Trustee's complaint, arguing that the common law claims were preempted by the Martin Act. (Declaration of Martin Flumenbaum dated Oct. 6, 2011 ("Flumenbaum Decl."), Ex. C.) In August 2011, the Bankruptcy Court requested supplemental briefing on the doctrine of in pari delicto. In response,

Mark and Andrew argued that the common law claims were barred by the doctrine of <u>in pari delicto</u> and added that the Bankruptcy Court lacked jurisdiction to hear the common law claims in view of the Supreme Court's decision in <u>Stern v. Marshall</u>, 131 S.Ct. 2594 (2011). (Flumenbaum Decl., Exs. J-N.)

II. <u>The Bankruptcy Court's Decision</u>

By the Decision & Order dated September 22, 2011, Bankruptcy Judge Burton R. Lifland granted in part and denied in part Mark and Andrew's motion to dismiss. (Decision & Order at 58.) Judge Lifland characterized the Trustee's complaint as a "leaner rather than a ringer" because it contained "correctable pleading deficiencies." (Decision & Order at 4, n.6.) Judge Lifland denied Mark and Andrew's motion with respect to the common law claims. (Decision & Order at 47.) Specifically, Judge Lifland held that the Martin Act does not preempt all common law claims arising in the securities context, just those sounding in "fraud, deception, unreasonable future promise, or false representation related to the sale of a security." (Decision & Order at 44-45.) The Bankruptcy Court found that the Trustee's common law claims were not related to the fraudulent investment advice Madoff gave his clients and investors, and thus were not preempted by the Martin Act. (Decision & Order at 46-47.) The Bankruptcy Court also concluded that the doctrine of <u>in pari delicto</u> did not bar the Trustee's common law claims against Mark and Andrew because they were insiders and fiduciaries of BLMIS. (Decision & Order at 43.) The Bankruptcy Court did not address Mark and Andrew's additional contention that the Bankruptcy Court lacked subject matter jurisdiction to hear the common law claims in light of the Supreme Court's ruling in <u>Stern v. Marshall</u>, 131 S.Ct. 2594 (2011).

## DISCUSSION

District courts have jurisdiction over appeals from interlocutory orders of a bankruptcy court. See 28 U.S.C. § 158(a). The district court has discretion to determine whether leave to appeal is warranted. See Gibson v. Kassover, 343 F.3d 91, 94 (2d Cir.2003). In evaluating requests for leave to appeal, reviewing courts apply the three-part test codified in 28 U.S.C. § 1292(b). See Sec. Investor Prot. Corp. v. Bernard Madoff Inv. Sec. LLC, SIPA Liquidation No. 08–01789 (SAS), 2010 WL 3260074, at *3 (S.D.N.Y. Aug. 6, 2010).

First, the movant must demonstrate that the order being appealed concerns a "controlling question of law" in which reversal of the bankruptcy court's order would (1) terminate the action or (2) materially affect the outcome of the litigation. In re Adelphia Commc'ns Corp., 333 B.R. 649, 658 (Bankr. S.D.N.Y. 2005). The question must "refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." Adelphia, 333 B.R. at 658 (internal citations omitted).

Second, there must be a "substantial ground for a difference of opinion," where "genuine doubt [exists] as to the correct applicable legal standard relied on in the order." Adelphia, 333 B.R. at 658-59. Genuine doubt exists where "(1) there is conflicting authority on the issue or (2) the issue is particularly difficult and of first impression." Enron Corp. v. Springfield Assocs., LLC (In re Enron Corp.), No. 01-16034 (SAS), 2006 WL 2548592, at *4 (S.D.N.Y. Sept. 5, 2006).

Third, the movant must show a possibility that an appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). A movant can satisfy this prong of the Section 1292(b) test by showing that an appeal "promises to advance the time

for trial or shorten the time required for trial." In re Enron Corp., No. 01–16034 (SAS), 2007 WL 2780394, at *2 (S.D.N.Y. Sept. 24, 2007) (quotations omitted).

Finally, leave to appeal from interlocutory orders should be granted only in "exceptional circumstances [that] . . . overcome the general aversion to piecemeal litigation and justify departing from the basic policy of postponing appellate review until after the entry of a final judgment." In re Bernard L. Madoff Investment Sec. LLC (In re Madoff), No. 11 MC 0012 (KMW), 2011 WL 3897970, at *3 (S.D.N.Y. Aug. 31, 2011) (quotations omitted). An interlocutory appeal is not an appropriate vehicle for early review of difficult rulings in hard cases. See German v. Fed. Home Loan Mortg. Corp., 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995).

I. Martin Act Preemption

Mark and Andrew argue that the Martin Act preempts the Trustee's common law claims. However, the New York Court of Appeals recently scuttled that argument. See Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc., --- N.Y.3d ----, 2011 WL 6338898, 2011 N.Y. Slip Op. 09162 (N.Y. Ct. App. Dec. 20, 2011). The New York Court of Appeals explained that "the plain text of the Martin Act, while granting the Attorney General investigatory and enforcement powers and prescribing various penalties, does not expressly mention or contemplate the elimination of common-law claims[.]" Assured Guar., 2011 N.Y. Slip Op. 09162, at *4. It is well settled that a statute does not preempt common law rights unless there is "a clear and specific legislative intent" to do so. Assured Guar., 2011 N.Y. Slip Op. 09162, at *4 (citing Hechter v. N. Y. Life Ins. Co., 46 N.Y.2d 34, 39 (1978). The New York Court of Appeals found nothing in the plain text, amendments, or legislative history of the Martin Act demonstrating the required specific intent to preempt common law causes of action. Assured

Guar., 2011 N.Y. Slip Op. 09162, at *4.  While the New York Court of Appeals clarified that there is no private right of action under the Martin Act, it rejected the reasoning that private common law claims would interfere with the Attorney General's ability to enforce the act.  See Assured Guar., 2011 N.Y. Slip Op. 09162, at *6.  To the contrary, "to hold that the Martin Act precludes properly pleaded common-law actions would leave the marketplace 'less protected than it was before the Martin Act's passage, which can hardly have been the goal of its drafters[.]'" Assured Guar., 2011 N.Y. Slip Op. 09162, at *6 (quoting Anwar v Fairfield Greenwich Ltd., 728 F Supp 2d 354, 371 (S.D.N.Y. 2010)).

Assured Guaranty upends the authority Mark and Andrew rely on for their preemption argument.  See Castellano v. Young & Rubicam, Inc., 257 F.3d 171, 190 (2d Cir. 2001) (affirming Martin Act preemption of breach of fiduciary duty claim brought by seller of securities); see also, e.g., In re Beacon Assocs. Litig., 745 F. Supp. 2d 386, 431-34 (S.D.N.Y. 2011) (dismissing claims for, inter alia, breach of fiduciary duty, gross negligence, and unjust enrichment for failing to warn investors of Madoff's Ponzi scheme); Kassover v. UBS AG, 619 F. Supp. 2d 28, 35-39 (S.D.N.Y. 2008) (dismissing various state and common law claims brought by investors as preempted by the Martin Act).  Undoubtedly, those cases would have been decided differently had those courts received the benefit of Assured Guaranty's guidance.  See In re J.P. Jeanneret Assocs., 769 F.Supp.2d 340, 378 (S.D.N.Y. 2011) (applying Castellano and dismissing common law claims, but noting that "[a] New York Court of Appeals decision changing the [Martin Act preemption] rule . . . would of course be applied by this Court[.]").

Moreover, even without Assured Guaranty, the Bankruptcy Court applied the correct law in holding that the Martin Act is not a blanket prohibition on private litigation related

to wrongdoing committed by any individual working in the securities industry. See Louros v. Kreicas, 367 F. Supp. 2d 572, 595-96 (S.D.N.Y. 2005) ("[T]he reach of the [Martin] Act cannot be unlimited and thus [a] claim of breach of duty that involves securities but does not allege any kind of dishonesty or deception implicates neither the plain language of the statute nor its policies.") (internal quotations omitted); see also Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc., 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004); Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC, No. 02 Civ. 0767 (LBS), 2003 WL 22052894, at *6 (S.D.N.Y. Sept. 2, 2003). Thus, there was no preemption because the Bankruptcy Court found that the Trustee did not allege that Mark and Andrew deceived investors in connection with the sale of securities or any other transaction.

II. In Pari Delicto

Mark and Andrew argue that the Bankruptcy Court erred in not ruling that the doctrine of in pari delicto bars the Trustee's common law claims. "A bankruptcy trustee is often barred from bringing [common law] claims on behalf of the debtor's estate because of the common law doctrine of in pari delicto, which generally precludes a wrongdoer like Madoff Securities from recovering from another wrongdoer." Picard v. HSBC Bank PLC, 424 B.R. 25, 29 (S.D.N.Y. 2011). Under the doctrine, a bankruptcy trustee lacks standing to bring a claim that would be barred. See Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991). However, as the Bankruptcy Court noted, "it is well established that the Wagoner and in pari delicto rules do not apply to actions of fiduciaries who are insiders." (Decision & Order at 41.) The insider exception prevents the injustice that "a trustee could never sue the debtor's

insiders on account of [the insiders'] own wrongdoing." In re Granite Partners, L.P., 194 B.R. 318, 332 (Bankr. S.D.N.Y. 1996).

Mark and Andrew do not challenge the law the Bankruptcy Court applied. Rather, they take issue with the Bankruptcy Court's conclusion that the Trustee alleged that Mark and Andrew were corporate insiders and fiduciaries of BLMIS. Because they managed the market making and proprietary trading units and not the investment advisory services unit at the heart of the Ponzi scheme, Mark and Andrew contend the corporate wrongdoing of BLMIS was fully independent of the alleged wrongdoing of the insiders. But again, this argument, which turns on the Bankruptcy Court's assessment of the pleadings, is not a "pure question of law" suited for interlocutory appeal. See Glenn, 1980 WL 141382, at *1. At best, Mark's and Andrew's status as insiders and the extent of their fiduciary duties are questions of fact requiring discovery and trial. See Fogarazzo v. Lehman Bros., Inc., No. 03 Civ. 5194 (SAS), 2004 WL 1555136, at *2 (S.D.N.Y. July 9, 2004) ("appeals challenging pre-trial rulings upholding pleadings against demurrer only stimulate the parties to more and greater pre-trial sparring apart from the merits. . . . [A] reversal at most could lead only to a remand for repleading, with possibilities of further interlocutory appeals thereafter[.]") (quoting Gottesman v. Gen. Motors Corp., 268 F.2d 194, 196 (2d Cir. 1959)).

In cases involving Ponzi schemes, where the factual record has not yet been developed, motions for leave to appeal denials of motions to dismiss are usually denied. See, e.g., Merkin, 2011 WL 3897970, at *7; Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Sec. Fund Ltd.), 288 B.R. 52, 57-58 (Bankr. S.D.N.Y. 2002); see also Degulis v. LXR Biotechnology, Inc., 95 Civ. 4204, 1997 WL 20832, at *5 (S.D.N.Y. Jan. 21, 1997).

Accordingly, the Bankruptcy Court's characterization of Mark's and Andrew's role in the Ponzi scheme is not a basis to allow an interlocutory appeal.

III. Stern v. Marshall

Mark and Andrew argue that the Bankruptcy Court lacks subject matter jurisdiction to hear the Trustee's common law claims under Stern v. Marshall, 131 S. Ct. 2594 (2011). However, the Supreme Court's recent decision does not divest bankruptcy courts of jurisdiction to hear all common law claims. In Stern, the Supreme Court held that a bankruptcy court does not have the constitutional authority to issue a final judgment on claims not necessarily determined as part of the process of allowing or disallowing proofs of claim. Stern, 131 S. Ct. at 2618. It is far too early in this proceeding for any court to say that the common law claims will not be determined in that process.

In Stern, a creditor filed a proof of claim alleging that the debtor, Anna Nicole Smith, had defamed him by stating that he had engaged in fraud to gain control of his father's assets. Stern, 131 S. Ct. at 2601. Smith asserted truth as a defense to the alleged defamation claim, and filed a counterclaim for tortious interference with the gift she expected from her deceased husband—the creditor's father. Stern, 131 S. Ct. at 2601. The bankruptcy court granted summary judgment in favor of Smith dismissing the creditor's claim for defamation. Following a bench trial, the bankruptcy court issued a judgment in favor of Smith's counterclaim, awarding her over $400 million in compensatory damages and $25 million in punitive damages.

Reversing that judgment, the Supreme Court held that, although the bankruptcy court had statutory authority to hear the state law counterclaim under 28 U.S.C. § 157(b)(2), the

bankruptcy court nevertheless lacked authority under Article III of the Constitution to enter a final judgment on the state law counterclaim because that claim was not necessarily resolved in ruling on the creditor's proof of claim. Stern, 131 S. Ct. at 2620. The Supreme Court reasoned that Article III of the Constitution prohibits Congress from withdrawing from "judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." Stern, 131 S. Ct. at 2609. The Supreme Court concluded that the counterclaim involved purely private rights under state law that fall within the purview of Article III Courts. Further, the counterclaim did not fit within any of the limited "public rights" exceptions which Congress could assign to "legislative" courts for resolution. Stern, 131 S. Ct. at 2610.

In reaching its decision, the Supreme Court distinguished its holding in Katchen v. Landy, 382 U.S. 323 (1966) that summary adjudication of a trustee's preference claim against a creditor could proceed in a bankruptcy court rather than as a "plenary suit" before an Article III Court. Stern, 131 S. Ct. at 2616 (citing Katchen, 382 U.S. at 329-330, 332-333). In Katchen, the Supreme Court held that a bankruptcy referee could not rule on a proof of claim without first determining whether the creditor had received a voidable preference, which could vitiate or reduce the proof of claim. See Stern, 131 S. Ct. at 2616. The Supreme Court explained that there was "no question that the bankruptcy referee could decide whether there had been a voidable preference in determining whether and to what extent to allow the creditor's claim" because the same issue arose "as part of the process of allowance and disallowance of claims." Katchen, 382 U.S. at 332-333; see also Stern, 131 S. Ct. at 2616.

Notably, Stern reaffirmed the principle articulated in Katchen that "he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure." Stern at 2616 (quoting Katchen, 382 U.S. at 333). The Supreme Court further noted that, "one of those consequences was resolution of the preference issue as part of the process of allowing or disallowing claims, and accordingly there was no basis for the creditor to insist that the issue be resolved in an Article III court." Stern, 131 S. Ct. at 2616. The Supreme Court in Stern also discussed its prior holding in Langenkamp v. Culp, 498 U.S. 42 (1990), that a preferential transfer claim can be heard in bankruptcy when the allegedly favored creditor has filed a claim, because then "the ensuing preference action by the trustee become[s] integral to the restructuring of the debtor-creditor relationship." Stern, 131 S. Ct. at 2617 (internal citations omitted).

Thus, Stern distinguished Katchen and Langenkamp on their facts and held that because the bankruptcy court's resolution of the creditor's proof of claim for defamation did not fully resolve Smith's tortious interference counterclaim, Congress could not bypass Article III and vest the bankruptcy court with the power to enter a final judgment on that counterclaim. See Stern, 131 S. Ct. at 2618. Here, however, the Trustee's common law claims might still be resolved as part of "the allowance or disallowance" of Mark's and Andrew's proofs of claims, and it would be premature to insist that the common law claims be litigated in an Article III court.

Together, Mark and Andrew have filed approximately $90 million in proofs of claims for, inter alia, unpaid compensation, wages and bonuses. The Trustee asserts fraudulent transfer claims under Bankruptcy Code §§ 544 and 548 (which incorporate claims brought

pursuant to the New York Debtor and Creditor Law), and seeks recovery of tens of millions of dollars misappropriated from BLMIS by Mark and Andrew. The Trustee also asserts common law claims seeking to recover the excessive compensation Mark and Andrew received while neglecting their fiduciary duties to BLMIS. Thus, the common law claims for breach of fiduciary duty, negligence and unjust enrichment overlap with the process of determining whether Mark and Andrew were entitled to any compensation at all from BLMIS.

Under Stern, the bankruptcy court retains authority to determine all of the Trustee's common law claims to the extent that it must do so to determine the allowance or disallowance of Mark and Andrew's proofs of claim. See In re Salander O'Reilly Galleries, 453 B.R. 106, 118 (Bankr. S.D.N.Y. 2011) ("[I]t is clear" from Stern v. Marshall and other Supreme Court precedent "that the Bankruptcy Court is empowered to apply state law when doing so would finally resolve a claim."). Because Mark and Andrew "invoked the aid of the bankruptcy court by offering a proof of claim and demanding its allowance [they] must abide by the consequences of that procedure," and there is "no basis for [them] to insist that the issue be resolved in an Article III Court." Stern, 131 S. Ct. at 2616-17 (citations omitted).

Moreover, resolution of an interlocutory appeal in Mark and Andrew's favor will not materially advance this litigation. Under any interpretation of Stern, a bankruptcy court can retain jurisdiction over the common law claims until they are ready for trial. See Stern, 131 S. Ct. at 2620 (holding that bankruptcy courts are not barred from "proposing findings of fact and conclusions of law"). Nor do interlocutory appeals "materially advance the termination of this litigation" when the Trustee's claims for fraudulent conveyance, voidable preference, and

subordination will continue regardless of the disposition of the issues on appeal. Bishop v. Best Buy, Co., No. 08 Civ. 8427 (LBS), 2011 WL 4011449, at *15 (S.D.N.Y. Sept. 8, 2011).

### CONCLUSION

For the foregoing reasons, the Estate of Mark D. Madoff and Andrew H. Madoff's motion for leave to file an interlocutory appeal from the Bankruptcy Court's Decision & Order dated September 22, 2011 is denied.

Dated: December 22, 2011
New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Marc D. Powers, Esq.
David J. Sheehan, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
*Counsel for Plaintiff*

Andrew J. Ehrlich, Esq.
Stephen J. Shimshak, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
*Counsel for Defendants*